# Hodgins *v.* Hodgins, Appellant.

*Divorce—Desertion—Justifiable desertion.*

In an action for divorce on the ground of desertion, it was error to grant a divorce where it appeared that the libellant had failed to properly support his wife and by his conduct compelled her to withdraw from his house; that the trouble between the parties arose from the respondent's refusal to join in a deed of conveyance of their house, the money to purchase which she had saved, and there was no evidence that the libellant had ever requested the respondent to return to his home, or that he had ever made adequate provision for her.

Argued October 5, 1920.   Appeal, No. 8, Oct. T., 1920, by respondent, from decree of C. P. No. 1, Philadelphia County, Sept. T., 1918, No. 106, granting a divorce in the case of Wilbur Hodgins v. Annie Marie Hodgins.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ.   Reversed.

Libel in divorce.   Before PATTERSON, J.

The case was referred to George W. Reed, Esq., as master who recommended that the libel be dismissed. On exceptions to the master's report, the court sustained the exceptions, and granted a divorce.

*Error assigned,* among others, was the decree of the court.

*Edward J. Scanlon,* for appellant.

*Harry Cohen,* for appellee.

OPINION BY KELLER, J., December 10, 1920:

The cause of divorce averred in the libel was the wilful and malicious desertion of the libellant by the respondent which it was charged had occurred on July 26, 1916, and continued for the space of two years and upwards. The respondent in her answer denied the charge and averred, on the contrary, that the libellant on the date named in the libel, had deserted her.

The master found that the libellant had failed to prove the allegations of his libel, that the evidence showed he had deserted the respondent, and recommended a decree dismissing the libel.

The court below sustained exceptions to the master's report and entered a decree of divorce a vinculo matrimonii.

We have carefully reviewed all the evidence in the case and are satisfied that it sustains the master's report. In our opinion it does not justify the finding of the court that the respondent left the libellant's home without his consent and against his protest and that she has refused to return to him. The trouble between the parties arose from the respondent's refusal to join in the conveyance of their home,—the money to purchase which she had saved,—to the woman whom she felt to be responsible for the waning of her husband's affections.

On two previous occasions she had been compelled to leave the home by reason of his arbitrary conduct and violent temper, but had returned on his promise to do better.

The amendment of his conduct, however, did not last long. It seems rather to have ended in a studied attempt to compel his wife to leave him.

Although he was making wages of from $18 to $21 a week he gave her to run the house during six weeks prior

to the final separation only $6 per week and for the last two weeks only $3.50 per week. In order to get the money necessary to keep things going she was compelled to get outside work for part of the day.

While she was thus at work, without any notice to her of his intentions, he called at the house on the morning of July 26, 1916, with a wagon and hauled away the bed room suite and parlor suite, the only furniture that had not been smashed by him in one of his previous outbursts of temper, and emptied the bureau drawers, left the linens lying on the floor and the stuffing pulled out of the mattress. On hearing of this occurrence she hurried home and while she was there gathering the wreckage together, he came in. She asked him where he had taken the furniture. He replied, "It is my business, not yours," and left the house, and she thereupon took the rest of her things and moved to her sister's, ten or twelve doors away. From July 26, 1916, to May 18, 1918, he called to see her four times to ask her to agree to sell the property. He never asked her to come back to the house and live with him. His own testimony was that he asked her to leave Philadelphia and go west with him but did not ask her to come and live with him anywhere else, and as he made no move towards going west himself, we are justified in regarding the offer as a mere subterfuge.

The libellant's entire testimony is, in our opinion, shifty, evasive and unworthy of belief, and it is entirely unsupported.

His excuse for removing the furniture,—that he wanted to pawn it to raise $20 taxes which were due three weeks later,—is in keeping with the rest of his evidence. As he had kept practically all his wages for the previous six weeks it would seem that he might have paid the tax out of the money thus held back, or have saved it from the $60 he would earn during the three weeks ensuing before it had to be paid. The evidence of the respondent

Opinion of the Court.   [75 Pa. Superior Ct.

on the other hand, has the appearance of truth and is corroborated to some extent.

The evidence on the whole fully justifies the finding of the master that there was no proof of any wilful and malicious desertion of the libellant by the respondent.

The assignments of error are sustained.   The decree is reversed and the libel is dismissed.   Costs to be paid by the appellee.